Austin Manes (State Bar No. 284065)
Herbert Smith Freehills
Kramer (US) LLP
425 Page Mill Road, Suite 233
Palo Alto, CA 94306
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
austin.manes@hsfkramer.com

Norman C. Simon (*pro hac vice* pending)
Eileen Patt (*pro hac vice* pending)
Rachel Czwartacky (*pro hac vice* pending)
Herbert Smith Freehills
Kramer (US) LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
norman.simon@hsfkramer.com
eileen.patt@hsfkramer.com
rachel.czwartacky@hsfkramer.com

*Attorneys for Plaintiff*
Google LLC

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| GOOGLE LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>DOES 1-8,<br><br>Defendants. | Case No.<br><br>**PLAINTIFF GOOGLE LLC'S COMPLAINT FOR**<br><br>1. TRADEMARK INFRINGEMENT UNDER 15 U.S.C. § 1114;<br>2. UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN UNDER 15 U.S.C. § 1125 (a)(1)(A);<br>3. FALSE ADVERTISING UNDER 15 U.S.C. § 1125 (a)(1)(B);<br>4. UNFAIR COMPETITION UNDER CAL. BUS. & PROF. CODE § 17200; and<br>5. BREACH OF CONTRACT<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Google LLC ("Google") complaints and alleges against Defendants Does 1-8, as follows:

## INTRODUCTION

1. The theft of usernames and passwords has been a persistent and costly threat to society as the Internet has evolved into a central feature of daily life. Schemes that impersonate reputable companies, such as Google, have surged, inflicting significant harm on consumers and eroding trust in legitimate brands. This theft of personal information ("PI"), referred to as "credential harvesting," impacts millions of people around the world and causes a dramatic impact on those victimized by these schemes. In 2024 alone, victims in the U.S. lost over $12 billion. *See* Ex. 1 at 1 (FTC Article). Credential harvesting schemes typically operate where bad actors impersonate a legitimate business to deceive victims into providing their PI. These bad actors then exploit or sell on illicit online markets this harvested PI.

2. The specific credential harvesting scheme in this case exploits Google's trademarks and brand recognition to lure job seekers into divulging their PI under the false pretense of potential employment. The use of a potential employment opportunity to elicit a response from the recipient is a tactic that has been rising dramatically in the last several years, with at least $501 million stolen from victims since 2020. *See* Ex. 1 at 1.

3. This credential harvesting scheme is initiated by sending emails or other messages that prominently display Google's trademarks and distinctive color scheme, and which falsely claim that the recipient has been selected for a Google job interview. *See* Ex. 2. In the message, the purported sender claims to be a member of Google's hiring team. The message prompts recipients to explore this opportunity by clicking a link embedded in the message to reserve an interview time with Google. Following the link takes recipients to a website designed to mimic the interface of the Google job application portal, as it is populated with numerous Google trademarks and visual signifiers. *See id.*; *see also* Ex. 3. The webpage then prompts recipients to provide their PI, including their name, email, and phone number. *See* Ex. 3. Next, to register for an interview, recipients are provided with a popup screen that prompts them to login with their Google username

and password. *See* Exs. 3-5. Once entered, this information is routed to a backend system that the perpetrators of the scheme control.

4. The perpetrators intentionally use unauthorized reproductions of Google's marks and branding to mislead recipients into believing they are interacting with Google. Their conduct harms both the recipients whose credentials are stolen and Google, whose trademarks embody years of investment in safety, trust, and brand reputation.

5. Defendants are unknown individuals who appear to be based in Vietnam. Google has identified three categories of Doe Defendants who orchestrated this scheme and have concealed their identity from discovery. The first category of Doe Defendants are the developers who developed and updated the credential harvesting software ("Defendants' Harvesting Software") that is used to create the fraudulent websites that make unauthorized use of Google's trademarks (the "Developers"). The second category of Doe Defendants have disseminated Defendants' Harvesting Software (the "Disseminators"). These Doe Defendants have publicly posted it to online platforms, such as the well-known software development website, "GitHub." *See* Ex. 6. The third category of Doe Defendants deploy Defendants' Harvesting Software to a network of domains using legitimate website deployment platforms, such as "Vercel" or "Heroku," and then operate these websites that they registered for credential harvesting (the "Deployers"). *See id*.

6. Together, these Doe Defendants have misused Google's marks to harvest credentials from unsuspecting victims and evade discovery. Google brings this action to halt Defendants' unlawful conduct, prevent further injury to victims, and protect the integrity of Google's trademarks and brand.

## PARTIES

7. Plaintiff Google LLC is a limited liability company organized under the laws of the state of Delaware with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

8. The true identity of Defendant Doe 1 is unknown, but Google is informed and believes that this party controls the email address "lenguyentyieuro@gmail.com" used to register at least one domain that uses Google's protected marks for credential harvesting and phishing.

Additionally, Defendant Doe 1 controls the GitHub account identified by the alias "lenguyentyieuro," which first uploaded and then updated the code behind Defendants' Harvesting Software. Further, Doe 1 controls the Vercel account identified by the alias "lenguyentyieurogmailcoms-projects" which deployed Defendants' Harvesting Software to domains.

9. The true identity of Defendant Doe 2 is unknown, but Google is informed and believes that this party controls the email address "minhphamdinh2101@gmail.com" and the GitHub account identified by the alias "minhpd28," which updated the code behind Defendants' Harvesting Software.

10. The true identity of Defendant Doe 3 is unknown, but Google is informed and believes that this party developed the first iteration of the code behind Defendants' Harvesting Software.

11. The true identity of Defendant Doe 4 is unknown, but Google is informed and believes that this party registered the domains identified in Ex. 7 that host Defendants' Harvesting Software.

12. The true identity of Defendant Doe 5 is unknown, but Google is informed and believes that this party controls the Vercel account identified by the alias "hakuelforian43375s," which deployed Defendants' Harvesting Software to domains.

13. The true identity of Defendant Doe 6 is unknown, but Google is informed and believes that this party controls the Vercel account identified by the alias "lethao8249z," which deployed Defendants' Harvesting Software to domains.

14. The true identity of Defendant Doe 7 is unknown, but Google is informed and believes that this party controls the Vercel account identified by the alias "tungduongw1193," which deployed Defendants' Harvesting Software to domains.

15. The true identity of Defendant Doe 8 is unknown, but Google is informed and believes that this party controls the Vercel account identified by the alias "ant914487s," which deployed Defendants' Harvesting Software to domains.

16. Defendant Does 1-8 (collectively "Defendants") are presently unknown because they have concealed their identity through privacy services, various emails, and account aliases. Google is informed and believes that once further details are obtained in discovery that will lead to the identification of Defendants, Google will amend this Complaint to allege their true names and capacities, if and when they are discovered.

**JURISDICTION, VENUE, AND DIVISIONAL ASSIGNMENT**

17. This Court has subject matter jurisdiction pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1331, as this action arises under the federal statutes including the Lanham Act, as amended, 15 U.S.C. § 1051 *et seq*. (the "Lanham Act"). The Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Google's claim of Unfair Competition under the California Business and Professions Code § 17200, and Google's claim of breach of contract because the claims herein form part of the same case or controversy.

18. Defendants are subject to personal jurisdiction in this district and the exercise of jurisdiction over Defendants is proper under California Code of Civil Procedure § 410.10. Defendants have transacted business in the United States and in the state of California that gives rise to Google's claims. Defendants have also engaged in intentional, wrongful, illegal, and/or tortious acts, the effects of which Defendants intended to and knew would be felt in the United States and in California. Among other things, Defendants have incorporated Google's trademarks into spoofed websites that are used to solicit victims' personal financial information in California and throughout the United States and have directed multiple forms of communication for the purpose of planning and carrying out their unlawful acts. Defendants have also knowingly targeted individuals and businesses in the United States and in the state of California, including Google, whose principal places of business is in this district. Further, Defendants consented to the jurisdiction of the federal or state courts of Santa Clara County, California, by agreeing to Google's Terms of Service and the forum selection clause therein.

19. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because: (i) Google is headquartered in this District; (ii) Defendants' conduct is causing injury in this District; and (iii) Google is informed and believes that a substantial part of the events giving rise to Google's claims

occurred in this District. Venue is also proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to this Court's personal jurisdiction. Further, Defendants consented to venue in this District by agreeing to Google's Terms of Service, as discussed in more detail below.

20. This action is properly assigned to the San Jose Division of this District under Civil Local Rule 3-2(c) because Plaintiff Google is headquartered in Santa Clara County, which is served by the San Jose Division.

## FACTUAL ALLEGATIONS

### A. Background on Google and Its Trademark Protection Efforts

21. Google is a pioneer in the technology industry, offering a range of industry-leading products and online services that are embedded in our daily lives. Since launching its search engine in 1998, Google (under its parent Alphabet Inc.) has expanded to provide hundreds of products and services, including Google Cloud, Google Chrome, Gmail, and others. *See* Ex. 8. Over the years, Google has invested heavily, both financially and through time and effort, in establishing its recognized brand, building goodwill through consistent delivery of trusted, high-quality services.

22. Notably, Google has made considerable investments to advance cybersecurity and data protection across its products and services, including its commitment of $10 billion to these initiatives over five years between 2021 and 2026. *See* Ex. 9. Google makes this commitment alongside its diligent adherence to internationally recognized privacy and security standards applicable across core infrastructure supporting Google products such as Google Workspace, Google Cloud, and related services. *See* Ex. 10.

23. Google is committed to protecting its users through its privacy and user data protection practices and policies which safeguard user information. These policies include implementation of encryption mechanisms over user data in transit and providing tools to automatically delete activity data across its suite of consumer products, as shown in Google's privacy terms of use and privacy center articles, attached to this complaint as Ex. 11 and Ex. 12.

24. Google further protects its consumers through its proactive affirmative litigation program that unmasks and dismantles schemes that target its users. Since at least 2021, Google has

taken legal action against hundreds of bad actors around the world, in 16 cases in the United States alone. *See* Ex. 13.

25. Google also dedicates considerable time and resources to protect its distinctive trademarks through robust brand protection. Google's protection of its trademarks includes global trademark prosecution and maintenance, brand enforcement measures including sending demand letters to infringers, global watching of trademark registers and app stores, filing takedown notices across mobile app platforms and social media sites, domain recovery proceedings, opposition proceedings at trademark offices, and in some cases, litigation. *See* Exs. 13, 37, 38 & 42.

26. As further described below, Google owns valuable trademark rights for marks used in connection with its product and service offerings. Defendants have deliberately misused these trademarks in their efforts to exploit public interest in Google's brand and offerings to deceive victims into providing their PI.

**B. The Google Marks**

27. Google's brand is upheld by its strong goodwill with consumers, its extensive common law rights, and its collection of federally registered trademarks, logo, and distinctive trade dresses ("Google Marks"). Copies of some of these marks are shown in Ex. 25.

28. Google owns numerous trademark registrations for the GOOGLE mark and variations thereof, including but not limited to U.S. Registration Nos. 2,806,075; 2,884,502; 4,058,966; 4,120,012; 4,123,471; 4,168,118; 4,202,570; 4,217,894; 4,525,914; 5,324,609; 5,324,610; and 6,373,292. Copies of these registrations are attached as Exs. 14-15, 17-18 & 26-36; *see also* Ex. 25.

29. Google uses its well-known GOOGLE mark across a range of its products and services, including across its Google careers application process, as shown below.

30. The Google Marks also include a design mark that consists of the letter "G" and the distinct combination of Google's well-known colors to form the "G Logo" as shown below.

31. Google has used the G Logo in U.S. commerce since at least as early as 2015, leading to its widespread recognition among consumers as a symbol of Google and its services. Google owns federal trademark registrations for the G Logo, including but not limited to U.S. Registration Nos. 5,365,541; 5,520,292; and 5,520,297. Copies of these registrations are attached as Exs. 34, 35 & 18.

32. Google has invested considerable effort and resources developing and marketing a wide variety of products and services offered under its protected marks. As threats from malicious online actors have grown, Google has further dedicated its resources, including operational and strategic teams, to ensuring its products are safeguarded against misuse and bad actors.

33. The successes of Google's brand protection program are well documented. Google has won almost all four hundred and thirty-three (433) domain name dispute proceedings it has initiated before the National Arbitration Forum ("NAF") and World Intellectual Property Organization ("WIPO") under the Uniform Domain-Name Dispute-Resolution Policy ("UDRP"). *See* Exs. 37, 38 & 42 (Google's NAF and WIPO UDRP stats, showing only three (3) claims denied). Further, since at least 2021, Google has taken legal action against hundreds of bad actors around the world, including numerous affirmative cases in the United States alone, to unmask and dismantle schemes that target its users and misuse the Google Marks. *See* Ex. 13 (showing cases initiated by Google against bad actors, as displayed on Google's affirmative litigation website).

Google's brand is also consistently recognized as one of the most valuable brands in the world by leading industry studies, further underscoring the strength and global recognition of the Google Marks. *See* Ex. 39 (Kantar BrandZ "Top 100 Most Valuable Global Brands" study, recognizing Google as the most valuable brand of 2026); *see also* Ex. 40 (Brand Finance Global 500 annual report for 2026, recognizing Google as the third most valuable brand for 2026).

34. Google's global reputation for high quality services and the goodwill associated with its brand are built on a foundation of online trust and safety, making it a brand users around the world know they can trust. Currently, Google products and services are used by at least five billion users around the world. *See* Ex. 20. As a result, Defendants have targeted Google's trusted brand and its trademarks to support Defendants' malicious credential harvesting and phishing schemes. Defendants seek to misuse the global recognition of the Google Marks to reach a global audience of job seekers to victimize.

**C. Defendants' Credential Harvesting Scheme & Misuse of Google's Trademarks**

35. Defendants develop and distribute credential harvesting websites and software that replicate Google's job application processes. Using potential employment is particularly nefarious, as Defendants prey on the emotional cognitive biases of job seekers and trick them into providing their PI in the hopes of finding employment. To give their scheme an air of legitimacy, Defendants illegally use Google's trademarks to steal PI of unsuspecting job seekers, resulting in harm to both job seekers and Google's brand. Defendants' scheme can be described in three parts.

36. Google is informed and believes that the Developer Defendants develop Defendants' Harvesting Software, which is used to create webpages that imitate Google Career's webpage, and are the foundation of this scheme.

37. Google is informed and believes that the Disseminator Defendants disseminate Defendants' Harvesting Software by publicly posting and updating the source code on GitHub. *See* Ex. 6.

38. Google is informed and believes that the Deployer Defendants register numerous domains and distribute the resulting fake Google job portals and job application landing pages to the domains, using platforms like Vercel. *See* Ex. 6. Defendants' credential harvesting and phishing

scheme uses legitimate third parties who either publicly host the code for Defendants' Harvesting Software or launch Defendants' credential harvesting webpages, without knowledge of Defendants' scheme. Specifically, Google is informed and believes that the platform "GitHub" publicly hosts Defendants' Harvesting Software, which directs the placement of numerous Google Marks to create a convincing fake credential harvesting webpage, based on a comparison of some of the code. *See* Exs. 2, 6.

39. Similarly, Google is informed and believes that Defendants exploit the platform, Vercel, to deploy Defendants' Harvesting Software to domains and create websites. Defendants use Vercel to launch the front-end of their fake pages, so that these websites are publicly accessible. *See* Ex. 6. Defendants may also use a similar platform, Heroku, to deploy some of their credential harvesting websites.

40. Once websites are deployed, Defendants register numerous domains with an array of domain registrants to ensure unsuspecting job seekers can find these harvesting webpages. Google is informed and believes that Defendants have registered approximately three hundred (300) domains with eleven (11) registrars, including Porkbun LLC, Name.com, MarkMonitor Inc. (through subdomains of Heroku), and Tucows Domains Inc. in the United States alone. *See* Ex. 7 at 1, 2, 3-8.

41. Google is informed and believes that Defendants created the deployed websites with Defendants' Harvesting Software and elaborately designed them to mimic elements of Google's job application process. Defendants' HTML code contains specific instructions to produce credential harvesting webpages with the same look and feel of Google-affiliated products and services, without permission to use these marks. *See* Exs. 2, 6.

42. Defendants' credential harvesting scheme goes to lengths to mislead users into believing that they are on a legitimate Google website. These pages contain no fewer than 14 carefully placed Google Marks and signifiers to fake the legitimacy of Defendants' unsafe webpages, as shown within Exs. 2-5. These signifiers range from obvious placements to more nuanced uses. For instance, Defendants' Harvesting Software is designed to create websites that misrepresent the owner of the website as Google, with a clear aim to mislead the public. The

deceptive “book a call” introductory email is supposedly sent by the “executive Talent lead” within the “Google Careers” team. Additionally, Defendants use the “Google” logo which incorporates Google’s recognizable combination of blue, red, yellow, and green colors in the header of the email. Further, the word “Google” is used four times in a short email consisting of only four sentences. More detailed nuances also include a deceptive “manage preferences or unsubscribe” embedded link in smaller font closely followed by the word “Google,” as shown below, which mimics the Google mark with an embedded link that a job applicant would find in a legitimate email from Google.



**Jonathan Wells | Executive Talent Lead**
Interested in connecting, [redacted]?
To: [redacted]

Google Careers

Hi [redacted],

We're currently hiring for the role of **Director of Digital Marketing** and your leadership experience in the digital space caught our attention.

Your proven ability to scale campaigns, build high-performing teams, and drive growth through data-led decisions makes you a strong fit for what we're building at Google.

If you're open to a quick conversation, I'd be happy to share more about the role and get to know your current goals. You can select a time that works best for you below:

Book a Call

Thank you for your time — I look forward to hearing from you.

All the best,
**Jonathan Wells**
Executive Talent Lead
Google Careers

You received this message because your profile aligns with the Director of Digital Marketing opportunity at Google.
Manage preferences or unsubscribe

*See* Ex. 2 at 2, Ex. 3.

43. Similarly, the fake Google "Sign in" and "schedule a call" landing page includes colored shapes often used by Google, to mislead that the landing page is a Google webpage. It also

places the "G" logo brandishing Google's distinct combination of colors within the browser tab when the link is opened, as shown below.




*See* Ex. 3 (showing Defendants' spoofed Google careers webpage).




*See* Ex. 2 at 6 (showing Defendants' spoofed Google sign in webpage).

44. Defendants' solicitation emails also imitate Google's recognizable Google Sans font, which Google uses across its various websites and products, as shown below.

Google Careers

*See* Ex. 2 at 6 (showing Defendants' imitation of Google Sans font for the word "Careers").

Google Careers

*See* Ex.41 (showing Google's official careers website using the same font).

45. Similarly, Defendants' credential harvesting website copies the same image used by Google in its official Google Careers application website, as shown below.




*See* Ex. 2 at 6 (showing Defendants' credential harvesting website).




*See* Ex. 41 (showing Google's official careers website).

46. Defendants further built in a prompt requiring unsuspecting job seekers to read and accept "Google's applicant and candidate privacy policy," in an attempt to further reassure them

into a false of sense of safety that a Google team has created this website and that the information being provided is protected. *See* Ex. 3.

47. After facing this combination of Google trademarks, job seekers are asked to provide their full name, business email address, and phone number to allegedly book a call with Google. However, the back-end components that receive the input information have no affiliation with Google and the information is routed to Defendants. Google is informed and believes that Defendants exploit this information or provide it to other online nefarious actors.

48. Defendants' phishing and credential harvesting scheme targets potential victims around the world. For instance, variations of the "book a call" email are distributed in various languages, including Swedish and Spanish. *See* Ex. 2 at 3-4.

49. Defendants also use elaborate software configurations and credential harvesting strategies to maximize the impact of their harvesting webpages. For instance, they implement techniques to bypass filtering tools ordinarily successful in weeding out phishing emails. Particularly, they use the email notifications that the legitimate job posting platform, Bamboo HR, uses, to deceptively deliver phishing emails carrying links to its credential harvesting webpages to unsuspecting job seekers.

50. Defendants also prolong the life of the distributed credential harvesting domains, as they make minor changes to these credential harvesting websites to evade the detection of online safety mechanisms, so they can effectively maximize the length of time a website is accessible to unsuspecting job seekers before a domain is blocked.

51. Defendants also target Google Workspace credential login information, which grants access to a suite of Google's consumer products, including job seekers' Google email accounts, Google cloud-based Google Drive accounts, and Google documents services. *See* Ex. 21.

52. Defendants also implement strategies to fool job seekers into providing variations of their passwords. Defendants implement a software configuration within their credential harvesting webpage deceptively informs job seekers that the password they have provided is incorrect and coaxes job seekers into providing variations of a password that can be used to create profiles that lead to cyberattacks and hacks. *See* Ex. 22.

53. As a result of Defendants' malicious credential harvesting scheme, unsuspecting job seekers do not realize that they are providing their information to Defendants.

54. It is therefore imperative that this Court disrupt this credential harvesting and phishing scheme, not only to stop the continuing irreparable harm Defendants are causing to Google's brand, but to safeguard members of the public in the United States and around the world.

**D. Defendants' Phishing Enterprise & Misuse of Google's Trademarks**

55. Google's products and services require accepting Terms of Service ("ToS") as a prerequisite for access to these services, including access to Google's email service "Gmail."

56. Google's ToS varies by country, according to the user's IP address at the time the account is created. For example, a user who creates a Google Account from an IP address located in the United States must agree to Google's United States ToS, whereas a user accessing Google from an IP address in Vietnam must agree to Google's Vietnam ToS.

57. Although the applicable ToS varies by country, the substantive terms are largely consistent across jurisdictions. For instance, Google's ToS in both jurisdictions prohibit certain actions, including "accessing or using [Google's] services or content in fraudulent or deceptive ways," which is defined to specifically include a prohibition on "phishing" and "providing services that appear to originate from [Google] when they do not." *See* Ex. 11 at 6. The ToS also require that users do not harm others by "illegally impersonating" them. *Id*. at 5. Additionally, the ToS prohibit "using [Google's] services (including the content they provide) to violate anyone's legal rights, such as intellectual property or privacy rights." *Id*. at 6.

58. Both ToS similarly include governing law provisions for disputes arising out of or relating to the ToS, and require users to agree that "disputes will be resolved exclusively in the federal or state courts of Santa Clara County, California, USA, and you and Google consent to personal jurisdiction in those courts." *Id*. at 17.

59. Google is informed and believes that Defendants used Gmail accounts "lenguyentyieuro@gmail.com" and "minhphamdinh2101@gmail.com" to perpetuate their credential harvesting scheme, including by using them to register accounts on GitHub that are then used to upload, develop, disseminate, and deploy Defendants' Harvesting Software. Ex. 24.

60. Google is informed and believes that at least 43 domains are directly linked to the email address "minhphamdinh2101@gmail.com."

61. Google is informed and believes that Defendants assented to and entered into binding contracts with Google by creating and operating the identified Gmail accounts. As a condition of registering and using each Gmail account, Defendants were required to review and agree to Google's ToS, which governs access to and use of Google's services. *See* Exs. 11, 23. Defendants' creation and continued use of the Gmail accounts constitutes their acceptance of, and agreement to be bound by, Google's ToS.

**<u>COUNT ONE</u>**
**Infringement of Federally Registered Marks**
**15 U.S.C. § 1114(1)**

62. Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

63. Google is the owner of the valid and federally registered Google Marks.

64. Defendants have and continue to develop, disseminate, and deploy software on the internet, which makes unauthorized use of exact replicas or near exact replicas of the Google Marks with the deceptive aim of impersonating Google and harvesting PI for improper purposes.

65. Defendants' malicious use of the Google Marks is intended to cause confusion and deceive the public into believing that Google is the source Defendants' web pages. Members of the public have been misled and are likely to be misled into believing that Defendants' online representations and presence are sponsored by, approved by, or otherwise associated with Google. Defendants' intentional unauthorized use of Google's registered and protected marks constitutes trademark infringement in violation of 15 U.S.C. § 1114(1) and entitles Google to relief.

66. Google has no adequate remedy at law, and if Defendants' actions are not enjoined, Google will continue to suffer irreparable harm to its reputation and the goodwill of its well-known trademarks.

67. Further, Defendants have caused damage to Google and they have profited from their unlawful actions in an amount not known to Google.

68. Pursuant to 15 U.S.C. §§ 1116, 1117, Google is entitled to injunctive relief, damages, defendants' profits, and attorney's fees and costs.

**COUNT TWO**
**Unfair Competition and False Designation**
**15 U.S.C. § 1125(a)(1)(A)**

69. Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

70. Defendants have and continue to develop, disseminate, and deploy software, which makes unauthorized use of the Google Marks with the deceptive aim of impersonating Google and to harvest PI for improper purposes.

71. Defendants' malicious use of the Google Marks is intended to falsely represent that their websites are affiliated or connected to Google, so they can deceive the public into providing their PI into Defendants' websites under the mistaken belief that they are sponsored by Google. Members of the public are likely to be misled and have been misled into believing that Defendants' online representations and presence are sponsored by, approved by, or otherwise associated with Google. Defendants' intentional unauthorized use of Google's registered and protected marks as described above constitutes Unfair Competition and False Designation of Origin in Violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(A) and entitles Google to relief.

72. Defendants' misrepresentations and infringement of the Google Marks has injured and continues to injure Google in an amount to be proven at trial. Defendants' malicious conduct has caused and is continuing to cause irreparable injury to Google including to Google's goodwill, and Google will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

73. Pursuant to 15 U.S.C. §§ 1116, 1117, Google is entitled to injunctive relief, damages, Defendants' profits, and attorney's fees and costs.

**COUNT THREE**
**False Advertising**
**15 U.S.C. § 1125(a)(1)(B)**

74. Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

75. Defendants falsely represent that the emails soliciting job applicants and websites linked to those emails are affiliated with or sponsored by Google. Defendants' use of the Google Marks in their credential harvesting scheme is intended to trick job seekers into believing that they are applying for a job interview with Google.

76. By disseminating emails to recipients around the world and using the Google Marks on their websites accessible to those recipients around the world, Defendants are misrepresenting that the websites are legitimate Google websites seeking PI from job applicants.

77. Defendants' malicious use of the Google Marks is a complete misrepresentation and falsehood. Members of the public are likely to be misled and have been misled into believing that Defendant's online representations and presence are sponsored by, approved by, or otherwise associated with Google. Defendants' intentional unauthorized use of Google's registered and protected marks as described above constitutes False Advertising in Violation of the Lanham Act 15 U.S.C. § 1125(a)(1)(B) and entitles Google to relief.

78. Defendants' misrepresentations and infringement of the Google Marks has injured and continues to injure Google in an amount to be proven at trial. Defendants' malicious conduct has caused and is continuing to cause irreparable injury to Google and Google will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

79. Pursuant to 15 U.S.C. §§ 1116, 1117, Google is entitled to injunctive relief, damages, defendants' profits, and attorney's fees and costs.

**COUNT FOUR**
**Unfair Competition in Violation of Cal. Bus. & Prof. Code §§ 17200 et seq.**

80. Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

81. Defendants' malicious conduct constitutes unfair and unlawful business practices in violation of Cal. Bus. & Prof. Code §§ 17200 et seq.

82. Defendants' malicious conduct has injured and continues to injure Google in an amount to be proven at trial. Defendants have caused and are continuing to cause irreparable injury to Google and Google will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

**<u>COUNT FIVE</u>**

**Breach of Contract Under California Law (Violation of Google Terms of Service)**

83. Google realleges and incorporates by reference the allegations of each and every one of the preceding paragraphs as though fully set forth herein.

84. Google's ToS constitute valid and binding contracts between Google and Defendants, which Defendants assented to by creating and using Gmail accounts and related Google services.

85. Google fully performed its obligations under the ToS by providing Defendants access to Gmail and related Google services.

86. Defendants breached the ToS by impersonating Google and using Google services to engage in unlawful and prohibited conduct, including at least falsely representing themselves as Google, thereby resulting in intellectual property violations, fraud, and other deceptive practices. Defendants violated Google's ToS by at least through "illegally impersonating" others, "providing services that appear to originate from [Google] when they do not" and engaging in "phishing." *See* Ex. 11 at 5-6. Additionally, Defendants violated the ToS by "using [Google's] services (including the content they provide) to violate anyone's legal rights, such as intellectual property or privacy rights." *Id.* Defendants' breaches were intentional, willful, and material.

87. As a direct and proximate result of Defendants' breach of contract, Google has suffered and continues to suffer damages in an amount to be proven at trial, including by causing Google to assume costs and expend resources to investigate and address Defendants' breach. Defendants' breach has caused and is continuing to cause irreparable injury to Google and Google

will continue to suffer damage and irreparable injury unless and until that infringement is enjoined by this Court.

88. Pursuant to California law, Google is entitled to injunctive relief, damages, defendants' profits, and attorney's fees and costs.

**PRAYER FOR RELIEF**

WHEREFORE, Google respectfully requests the following relief:

1) That the Court enter a judgment in Google's favor and against Defendants on all counts;

2) That Defendants' conduct is found to be willful;

3) That the Court issue a preliminary and permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from using and infringing the Google Marks, engaging in the deceptive practices described herein, and using any Google account and/or Gmail account in a manner that violates Google's ToS;

4) That Google be awarded damages for Defendants' trademark infringement and malicious conduct and that these damages be trebled due to Defendants' willfulness, in accordance with 15 U.S.C. § 1117; and

5) That Google be granted such further relief as the Court may deem just and equitable.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Google respectfully demands a jury trial of all issues so triable.

Respectfully submitted,

Dated: October 29, 2026

By: /s/ *Austin Manes*

Austin Manes (State Bar No. 284065)
Herbert Smith Freehills
Kramer (US) LLP
425 Page Mill Road, Suite 233
Palo Alto, CA 94306
Telephone: (650) 752-1700
Facsimile: (650) 752-1800
austin.manes@hsfkramer.com

Norman C. Simon (*pro hac vice* pending)
Eileen Patt (*pro hac vice* pending)
Rachel Czwartacky (*pro hac vice* pending)
Herbert Smith Freehills
Kramer (US) LLP
1177 Avenue of the Americas
New York, NY 10036
Telephone: (212) 715-9100
Facsimile: (212) 715-8000
norman.simon@hsfkramer.com
eileen.patt@hsfkramer.com
rachel.czwartacky@hsfkramer.com

*Attorneys for Plaintiff*
*Google LLC*